UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| RICKIE L. HILL,<br><br>    Plaintiff,<br><br>   v.<br><br>W. OAKLEY, et. al.,<br><br>    Defendants. | 3:11-cv-00609-RCJ-WGC<br><br>**REPORT & RECOMMENDATION OF U.S. MAGISTRATE JUDGE** |

This Report and Recommendation is made to the Honorable Robert C. Jones, United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and the Local Rules of Practice, LR IB 1-4. Before the court is defendant Wayne Oakley's (Oakley) Motion for Summary Judgment. (Doc. # 79.)[1] Plaintiff Rickie L. Hill (Plaintiff) filed a response. (Doc. # 93.) Oakley filed a reply (Doc. # 94), to which Plaintiff filed a response (Doc. # 95).

After a thorough review, the court recommends that Oakley's motion be denied.

## I. BACKGROUND

At all relevant times, Plaintiff was an inmate in custody of the Nevada Department of Corrections (NDOC). (Pl.'s Am. Compl., Doc. # 7 at 1.) Plaintiff, a pro se litigant, brings this action pursuant to 42 U.S.C. § 1983. (*Id*.) The allegations giving rise to this action took place while Plaintiff was housed at Ely State Prison (ESP). (*Id*.) The only defendant is ESP Correctional Officer Oakley. (*Id.*; Screening Order, Doc. # 24.)

Plaintiff was allowed to proceed with his claim that Oakley used excessive force against him in violation of the Eighth Amendment. (Doc. # 24.) Specifically, Plaintiff alleges that when he was transferred to ESP on October 19, 2010, defendant Oakley hit him twice in the stomach

---

[1] Refers to court's docket number.

while he was fully restrained, causing a sharp pain as if his ribs had been broken and causing him to spit up blood. (Doc. # 7 at 3-5.)

Oakley moves for summary judgment arguing that he did not use excessive force against Plaintiff. (Doc. # 79.)

## II. LEGAL STANDARD

"The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as to the facts before the court." *Northwest Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994) (citation omitted). In considering a motion for summary judgment, all reasonable inferences are drawn in favor of the non-moving party. *In re Slatkin*, 525 F.3d 805, 810 (9th Cir. 2008) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). On the other hand, where reasonable minds could differ on the material facts at issue, summary judgment is not appropriate. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1)(A), (B).

If a party relies on an affidavit or declaration to support or oppose a motion, it "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).

In evaluating whether or not summary judgment is appropriate, three steps are necessary: (1) determining whether a fact is material; (2) determining whether there is a genuine dispute as to a material fact; and (3) considering the evidence in light of the appropriate standard of proof. *See Anderson*, 477 U.S. at 248-250. As to materiality, only disputes over facts that might affect

the outcome of the suit under the governing law will properly preclude the entry of summary judgment; factual disputes which are irrelevant or unnecessary will not be considered. *Id*. at 248.

In deciding a motion for summary judgment, the court applies a burden-shifting analysis. "When the party moving for summary judgment would bear the burden of proof at trial, 'it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial.'...In such a case, the moving party has the initial burden of establishing the absence of a genuine [dispute] of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (internal citations omitted). In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex Corp. v. Cartrett*, 477 U.S. 317, 323-25 (1986).

If the moving party satisfies its initial burden, the burden shifts to the opposing party to establish that a genuine dispute exists as to a material fact. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a genuine dispute of material fact, the opposing party need not establish a genuine dispute of material fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987) (quotation marks and citation omitted). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation omitted). The nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *Id*. Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine dispute of material fact for trial. *Celotex*, 477 U.S. at 324.

>That being said,
>
>[i]f a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may: (1) give an opportunity to properly support or address the fact; (2) consider the fact undisputed for purposes of the motion; (3) grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it; or (4) issue any other appropriate order.

Fed. R. Civ. P. 56(e).

At summary judgment, the court's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine dispute of material fact for trial. *See Anderson*, 477 U.S. at 249. While the evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in its favor," if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *Id*. at 249-50 (citations omitted).

### III. DISCUSSION

**A. Standard-Eighth Amendment Excessive Force**

The Eighth Amendment prohibits the imposition of cruel and unusual punishment. U.S. Const. amend. VIII. It "embodies broad and idealistic concepts of dignity, civilized standards, humanity, and decency." *Estelle v. Gamble*, 429 U.S. 97, 102 (1976) (citation and internal quotations omitted). The "unnecessary and wanton infliction of pain ... constitutes cruel and unusual punishment forbidden by the Eighth Amendment." *Id*. (quoting *Whitley v. Albers*, 475 U.S. 312, 319 (1986)).

"[W]henever prison officials stand accused of using excessive physical force in violation of the [Eighth Amendment], the core judicial inquiry is...whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992); *see also Whitley*, 475 U.S. at 320-21; *Watts v. McKinney*, 394 F.3d 710, 711 (9th Cir. 2005); *Martinez v. Stanford*, 323 F.3d 1178, 1184 (9th Cir. 2003). "When prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency are always violated." *Hudson*, 503 U.S. at 9 (citing *Whitley*, 475 U.S. at 327).

In determining whether the use of force is excessive, courts are instructed to examine:

1 "the extent of the injury suffered by an inmate[,]" "the need for application of force, the
2 relationship between that need and the amount of force used, the threat 'reasonably perceived by
3 the responsible officials,' and 'any efforts made to temper the severity of the forceful response.'"
4 *Hudson*, 503 U.S. at 7 (quoting *Whitley*, 475 U.S. at 321).

5 An inmate need not establish serious injury; however, the lack of serious injury is
6 relevant to the Eighth Amendment inquiry. *See Wilkins v. Gaddy*, 130 S.Ct. 1175, 1178 (2010).
7 "The extent of injury may also provide some indication of the amount of force applied." *Id*.

8 That being said, not "every malevolent touch by a prison guard gives rise to a federal
9 cause of action...The Eighth Amendment's prohibition of 'cruel and unusual' punishments
10 necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided
11 that the use of force is not of a sort 'repugnant to the conscience of mankind.'" *Hudson*, 503 U.S.
12 at 9-10 (quoting *Whitley*, 475 U.S. at 327); *see also Wilkins*, 130 S.Ct. 1178 ("An inmate who
13 complains of a 'push or shove' that causes no discernible injury almost certainly fails to state a
14 valid excessive force claim." (citing *Hudson*, 503 U.S. at 9)). "Injury and force, however, are
15 only imperfectly correlated, and it is the latter that ultimately counts. An inmate who is
16 gratuitously beaten by guards does not lose his ability to pursue an excessive force claim merely
17 because he has the good fortune to escape without serious injury." *Wilkins*, 130 S.Ct. at 1178-79.
18 If the nature of the injuries is more than *de minimis*, but still "relatively modest," the inmate's
19 damages will likely be limited. *See id*. at 1180.

20 Courts must be deferential when reviewing the necessity of using force. *See Whitley*, 475
21 U.S. at 321-22; *see also Norwood v. Vance*, 591 F.3d 1062, 1067 (9th Cir. 2009), *cert. denied*,
22 131 S.Ct. 1465 (Feb. 22, 2011) (citing *Whitley*, 475 U.S. at 322) ("Prison officials are entitled
23 to deference whether a prisoner challenges excessive force or conditions of confinement.").

24 **B. Summary of Argument & Evidence**
25 **1. Oakley's Argument (Doc. # 79)**
26 Oakley argues that Plaintiff has no evidence to support his claim that he hit Plaintiff in
27 the stomach twice while fully restrained, because he was in the property room when Plaintiff
28 arrived at ESP and did not assault Plaintiff. (Doc. # 79 at 3-6; Doc. # 79-1, Oakley. Decl., ¶¶ 4-

1  5.) He further contends that Caseworker Oxborrow did not witness the second incident in the
2  property room, where Plaintiff claims Oakley punched Plaintiff for the second time. (Doc.
3  # 79-2, Oxborrow Decl., ¶ 9.) He argues that Plaintiff has fabricated the allegations against him.
4  (Doc. # 79 at 7.)

5  As an additional basis for granting summary judgment, Oakley argues that Plaintiff
6  suffered no verifiable injury. (Doc. # 79 at 3-4, 7; Doc. # 79-3, Garner Decl.[2], ¶¶ 4-5; Doc.
7  # 81-1 (Pl.'s medical records filed under seal).) Neither Plaintiff's medical kites nor his medical
8  records indicate that he sought or received treatment for any injury stemming from the alleged
9  excessive force incident. (*Id.*) Oakley asserts that it "defies logic that Plaintiff would not seek
10  any medical attention for what he claims felt like broken ribs and resulted in internal bleeding
11  causing him to spit up blood." (Doc. # 79 at 7:8-10.)

12  Even though Oakley maintains that no force was used, oddly, he appears to assert that
13  summary judgment is nevertheless warranted because Plaintiff admits he told defendant Oakley
14  to "go to hell" just before he was allegedly struck in the stomach, and Plaintiff had been
15  convicted of MJ2 assault and MJ3 battery charges on May 25, 2010, and was perceived as a
16  possible threat to officer safety. (Doc. # 79 at 6, citing Doc. # 7 at 4 and Doc. # 79-5 (Offense in
17  Custody Reports May 25, 2010 MJ2 assault and MJ3 battery convictions).)

18  Finally, Oakley argues that even assuming he did strike Oakley, he is entitled to qualified
19  immunity because he did not clearly act with malicious intent, which is required to prove an
20  excessive force claim, and Plaintiff cannot show that he had a clearly established Eighth
21  Amendment right to be free from the alleged use of non-deadly disciplinary force. (Doc. # 79 at
22  7-8.)

23  **2. Plaintiff's Argument (Doc. # 93)**

24  Plaintiff asserts that that he is a forty-eight year old black man who weighs 182 pounds

---

[2] Jon Garner is the Director of Nursing at ESP, and is the custodian of medical records there. (Doc. # 79-3, Garner Decl., ¶ 1.) He reviewed Plaintiff's medical records and kites for October 2010 through March 2011, and did not locate any correspondence, kite, unusual occurrence report, or other request or written report in the file regarding any alleged injury resulting from Oakley allegedly assaulting him on October 19, 2010. (*Id.* ¶¶ 4-5.) Nor is there a record of Plaintiff having a broken rib or spitting up blood as a result of an alleged assault on or about October 19, 2010. (*Id.* ¶ 6.)

1  and is six feet one and a half inches tall, and Oakley is a white male of about 280 pounds and six
2  feet four inches tall. (Doc. # 93 at 2.)  As background, he asserts that he knew Oakley from
3  dealings with him at ESP, and Oakley previously started a rumor that Plaintiff is gay. (*Id.*)
4  　　　He contends that on October 19, 2010, he arrived at ESP to serve a five year disciplinary
5  segregation sanction, and was seen in the hallway on intake by Caseworker Oxborrow and Nurse
6  Fields. (*Id*. at 3.) He contends that in the hallway, Oakley said to him: "So you brought your ugly
7  black ass back huh?" (*Id*.) Plaintiff responded: "Go to hell." (*Id*.) Oakley then said: "You're in no
8  position to be talking shit." (*Id*.) Oakley then hit Plaintiff in the stomach with full force while
9  Plaintiff was in full restraints. (*Id*.) Plaintiff felt a sharp pain in his midsection, as if his ribs had
10 broken. (*Id*.) He contends he did not say "go to hell" in an aggressive manner, but was simply
11 responding to Oakley's statement, and did nothing to provoke Oakley's conduct. (*Id*.)
12 　　　Next, Plaintiff claims that Oakley took him into the property room and he was met by
13 Caseworker Oxborrow and Nurse Fields. (*Id*.) It was at this time that he contends Oakley
14 punched him in the stomach again, in front of Caseworker Oxborrow and Nurse Fields, and two
15 other prisoners who had ridden on the bus with him to ESP. (*Id*. at 4.)[3]
16 　　　Plaintiff asserts that the day after the incident, he spit up small traces of blood, and told
17 the nurse what happened. (*Id*. at 4.) The nurse told him it was probably because he was not
18 brushing his teeth enough. (*Id*.) Plaintiff asked the nurse whether he had to pay for a doctor's
19 visit if he was assaulted. (*Id*.)
20 　　　In support of his response, Plaintiff provides his own affidavit stating that Oakley
21 assaulted him by punching him in the stomach twice on October 19, 2010, while he was in full
22 restraints. (*Id*. at 23.) He asserts that the assault was unprovoked. (*Id*.)
23 　　　Plaintiff also submits an affidavit of inmate Charles Webb in support of his response.
24 (Doc. # 93 at 21.) Webb states that in April 2011, he overheard Oakley bragging to an inmate
25 who disliked Plaintiff that he had beaten Plaintiff up when he first arrived here (to ESP) in 2010.
26 (*Id*.)

---

28 　　　[3] Plaintiff states that he was unable to secure an affidavit from one of the inmates. (Doc. # 93 at 4.)

1     Plaintiff claims that he had carbon copies of kites he had submitted on October 20 and
2     26, 2010, regarding this assault, but they were confiscated when Senior Correctional Officer J.
3     Cox searched his cell on June 2 and 3, 2014. (*Id*. at 4-5.)

4     Next, Plaintiff references the argument in Oakley's motion that Plaintiff fabricated the
5     allegations against him, and the statement in the motion that this is supported by the declarations
6     of Caseworker Oxborrow and Nurse Fields. (*Id*. at 17.) In his motion, Oakley represents that
7     both of these individuals state that neither of them witnessed the incident. (*Id*., citing Def.'s Mtn.
8     at 7:11-14) Plaintiff correctly points out, however, that only the declaration of Caseworker
9     Oxborrow is included as an exhibit to Oakley's motion. (*Id*.) There is no declaration on behalf of
10    Nurse Fields. (*Id*.) Plaintiff argues that Deputy Attorney General Keegan has therefore lied to or
11    manipulated the court by not including a declaration by Nurse Fields. (*Id*.)

12    Finally, Plaintiff contends that Oakley cannot flat out deny participation in the event, and
13    also assert qualified immunity. (*Id*. at 18.)

14    **3. Oakley's Reply (Doc. # 94)**

15    First, Oakley argues that neither Plaintiff's version of events, nor the affidavit of Charles
16    Webb, indicate that Webb actually witnessed the alleged assault on October 19, 2010. (Doc. # 94
17    at 2.)

18    Second, Oakley asserts that Plaintiff failed to provide direct evidence opposing the
19    motion for summary judgment. (*Id*. at 2-3.) He points to Plaintiff's claim that he made carbon
20    copies of kites he submitted regarding the assault, but claims were confiscated. (*Id*. at 3.) Oakley
21    argues that this does not constitute direct evidence establishing a genuine dispute of material fact
22    to defeat summary judgment. (*Id.*) He asserts that Plaintiff conducted discovery and could have
23    requested the production of all of his medical kites, but did not do so. (*Id*.) He contends this is
24    because these medical kites do not exist. (*Id*.) He maintains that Plaintiff's medical records are
25    devoid of any kite requesting treatment or any record of complaints of treatment related to any
26    alleged injury inflicted by defendant Oakley on October 19, 2010. (*Id*.)

27    **4. Plaintiff's Response to Oakley's Reply (Doc. # 95)**

28    First, Plaintiff points out that in his original grievance related to the incident, dated

- 8 -

1  October 28, 2010, he stated that defendant Oakley assaulted him in front of Caseworker
2  Oxborrow and the nurse. (Doc. # 95 at 1.) He contends that if Oakley thought he was lying in the
3  grievance, he would have brought charges against him for lying. (*Id*.) He also points out that
4  Oakley failed to address his argument regarding the omission of Nurse Fields' declaration in
5  support of his motion. (*Id*. at 1-2.)
6  Second, Plaintiff asserts that the exhibit containing his disciplinary convictions filed in
7  support of Oakley's motion is inaccurate, as he was only convicted of the MJ3 battery charge and
8  not the MJ2 assault charge. (*Id*. at 2-3.)
9  **C. Analysis**
10  The court finds that genuine disputes exist as to various material facts which preclude the
11  entry of summary judgment in favor of Oakley because the fact finder will be required to resolve
12  the parties' differing versions of the truth. *See T.W. Elec. Serv., Inc.*, 809 F.2d at 630. In other
13  words, when the record is taken as a whole, a rational fact finder could find in favor of Plaintiff,
14  the non-moving party. *See Matsushita*, 475 U.S. at 587 (citation omitted).
15  First, a genuine dispute of material fact exists as to whether the incident occurred at all.
16  Oakley maintains that he was in the property room, and therefore could not have punched
17  Plaintiff in the stomach that day. In support of his motion, he provides his own declaration,
18  stating that he was in the property room when Plaintiff arrived to ESP. In addition, he relies on
19  the declaration of Caseworker Oxborrow, who states that he did not witness any assault by
20  Oxborrow against Plaintiff on October 19, 2010, and if he did, he would have reported it to the
21  administration.
22  Plaintiff, on the other hand, maintains that when he arrived to ESP that day, defendant
23  Oakley made a snide remark to him, to which he responded: "Go to hell." He asserts that he did
24  not make the statement in an aggressive manner, or in order to provoke defendant Oakley, but
25  was merely responding to Oakley's remark. Defendant Oakley then proceeded to punch him with
26  full force in the stomach while he was in full restraints, and Plaintiff felt a sharp pain in his
27  midsection, as if his ribs had broken and spit up blood the following day.
28  Oakley contends that Plaintiff's version of events is not supported by any evidence;

however, that is not true, as Plaintiff supports his allegations through his verified complaint and affidavit, which is an accepted form of evidence in a "he said-he said" excessive force claim such as this one.

Oakley does not address Plaintiff's argument that his motion represents that Nurse Fields did not witness any assault, but then fails to provide her declaration attesting to that fact. Therefore, the court cannot determine whether this was an oversight or something more deliberate. In any event, it does not impact the court's conclusion that a genuine dispute of fact exists which precludes entering summary judgment in Oakley's favor.

Second, a genuine dispute of material fact exists as to the extent of Plaintiff's injury. Oakley points to the absence of a medical kite or record evidencing any injury as a result of the alleged assault. He argues that if a person suffered the injuries Plaintiff alleges he suffered, the person would have sought medical attention. Oakley acknowledges, however, that a plaintiff need not establish a serious injury in order to proceed with an excessive force claim. Plaintiff's own statement that Oakley's punch caused a sharp pain, as if a rib had been broken, and caused him to spit up blood the next day. While Oakley asserts that a person in this condition would have sought medical treatment, Plaintiff contends that he spoke with a nurse about spitting up blood and she told him it was probably because he did not brush his teeth enough, which he disputes. He also claims that he asked her whether he would be charged if he sought a medical appointment regarding an assault. Plaintiff has proffered evidence sufficient to create a genuine dispute of material fact as to whether his injury was more than *de minimis*. If the fact-finder determines that the injury was at least more than *de minimis*, but relatively modest, it will likely have an impact on Plaintiff's recovery of damages. *See Wilkins*, 130 S.Ct. at 1180.

Third, a genuine dispute of material fact exists as to the need for the use of force, the amount of force used, and the existence of any threat to officials. Oakley contends that he did not use force at all, but nevertheless points out that the alleged use of force was preceded by Plaintiff supposedly telling Oakley, "go to hell." While he maintains he did not use force, he argues that Plaintiff would have posed a reasonable threat given that he had recently been convicted of assault and battery charges. Plaintiff, on the other hand, maintains that there was no need to use

1  force, that the amount of force used was excessive, and Oakley could not have reasonably
2  perceived him as a threat as he had not been provocative and was fully restrained.

3  Finally, the court finds Oakley is not entitled to qualified immunity at this juncture.

4  "Qualified immunity protects government officials from civil damages 'insofar as their
5  conduct does not violate clearly established statutory or constitutional rights of which a
6  reasonable person would have known*.*" *Chappell v. Mandeville*, 706 F.3d 1052, 1056 (9th Cir.
7  2013) (citation omitted).

8  Whether qualified immunity applies thus 'turns on the objective legal reasonableness of
9  the action, assessed in light of the legal rules that were clearly established at the time it was
10 taken.'" *Chappell*, 706 F.3d at 1056 (quoting *Messerschmidt v. Millender*, 132 S.Ct. 1235, 1245
11 (2012)). In other words, a "[g]overnment official's conduct violates clearly established law
12 when, at the time of the challenged conduct, '[t]he contours of [a] right [are] sufficiently clear'
13 that every 'reasonable official would have understood that what he is doing violates that right.'"
14 *Ashcroft v. al-Kidd*, 131 S.Ct. 2074, 2083 (2011) (alterations in original) (quoting *Anderson v.*
15 *Creighton*, 483 U.S. 635, 640 (1987)).

16 When the court conducts a qualified immunity analysis, it must view the facts in the light
17 most favorable to the prisoner plaintiff. *Chappell*, 706 F.3d at 1057 (citations omitted). Here,
18 genuine disputes as to material fact exist that preclude the court from entering summary
19 judgment in favor of Oakley and from determining qualified immunity at this juncture. *See*
20 *Tolan v. Cotton,* 134 S.Ct. 1861, 1866 (2014) (citations omitted).

21 In conclusion, the court recommends that Oakley's motion be denied.

22 ///
23 ///
24 ///
25 ///
26 ///
27 ///
28 ///

### IV. RECOMMENDATION

**IT IS HEREBY RECOMMENDED** that the District Judge enter an order **DENYING** Oakley's motion for summary judgment (Doc. # 79).

The parties should be aware of the following:

1. That they may file, pursuant to 28 U.S.C. § 636(b)(1)(C), specific written objections to this Report and Recommendation within fourteen days of receipt. These objections should be titled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the district judge.

2. That this Report and Recommendation is not an appealable order and that any notice of appeal pursuant to Rule 4(a)(1) of the Federal Rules of Appellate Procedure should not be filed until entry of judgment by the district court.

DATED: January 29, 2015

_____
WILLIAM G. COBB
UNITED STATES MAGISTRATE JUDGE